IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-403 |
| JAHAAN ANDREWS, et al. | : | |

**GOVERNMENT'S TRIAL MEMORANDUM**

The United States of America, by and through David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Everett Witherell and Michael Miller, Assistant United States Attorneys for the District, hereby submits this Supplemental Trial Memorandum for the trial in the above-captioned matter. Jury selection in this matter is scheduled for Monday, February 23, 2026, at 9:30 a.m., and trial is scheduled to commence on Thursday, February 26, 2026, at 9:30 a.m.

I.     **FACTS OF THE CASE**

On October 6, 2020, prison guard Jahaan Andrews detained inmate V.H. in a holding cell inside the Curran-Fromhold Correctional Facility in Philadelphia, Pennsylvania. Andrews repeatedly argued with V.H. through the window of a locked door. Andrews, Sergeant Ronald Granville, and three other prison guards – including defendants Mumin Hart and Oneil Murray – then took V.H. to another room to be strip searched.

After V.H. entered the new room, he complied with the guards' orders by removing his clothes. Defendants Andrews, Hart, and Murray, along with Granville, then began punching and kicking V.H. while he was naked and defenseless. The defendants' attack fractured V.H.'s rib, bruised his lung, and caused his testicle to swell up to the size of a grapefruit. V.H. was

transported to Jefferson Torresdale Hospital and underwent scrotal surgery on afternoon of October 7, 2020. Doctors discovered and drained a blot clot caused by the attack, and V.H. had to wear a scrotal sling following the attack. None of the guards were injured by V.H. Moreover, none of the defendants intervened to stop the beating.

 Following the assault, the guards began falsifying their paperwork to conceal their crimes. Defendant Georgia Malloy, who was a lieutenant at CFCF and ordered the strip search of V.H., watched video that showed Granville punching V.H., then instructed Granville to fill out paperwork which stated that he merely observed other guards use force. Additionally, Andrews, Hart, and Murray falsified their use of force reports to conceal how they attacked V.H., with Andrews and Murray submitting multiple false reports. Likewise, Malloy reviewed video that showed Granville punching V.H., then submitted false reports which claimed that Granville did not use any force.

 The FBI conducted voluntary interviews with Andrews and Malloy. On July 5, 2022, Andrews repeatedly lied during his interview, stating that V.H.'s testicles were already damaged and swollen before the attack, and that Granville did not punch V.H. Two months earlier, on May 24, 2022, agents showed Malloy the video of the attack. The video clearly shows that only Granville was wearing a white shirt, and that an individual in a white shirt was punching V.H. When asked by agents if she could acknowledge that Granville was punching V.H., Malloy first responded that there were no cameras in the cell where the attack occurred, then claimed that anyone could have worn the white shirt, because the guards could have exchanged shirts inside the cell. After making these initial claims, Malloy finally admitted that the video showed Granville punching V.H. She also admitted that she reviewed the video before submitting her October 16, 2020, report, but nonetheless stated in the report that Granville was merely a witness

and did not use force against V.H.[1]

On September 10, 2025, a grand jury returned an eleven-count indictment against the defendants. In Counts One and Two, defendants Andrews, Hart, and Murray are charged with violating 18 U.S.C. § 242 by depriving V.H. of his constitutional right to be free of excessive force. Count One alleges that the defendants violated this right by assaulting V.H., while Count Two avers that they also did so by failing to intervene to stop the assault.

Count Three charges all four defendants with conspiracy under 18 U.S.C. § 371. The defendants are charged with conspiring to cover up the attack by falsifying records. Counts Four through Ten charge the defendants with falsification of records in violation of 18 U.S.C. § 1519, with Murray charged in Counts Four and Ten, Andrews charged in Counts Five and Nine, Malloy charged in Counts Six and Seven, and Hart charged in Count Eight. Finally, Count Eleven charges Andrews with making a false statement to the FBI in violation of 18 U.S.C. § 1001(a)(2).

## II.     POTENTIAL WITNESSES AND EVIDENCE

The government may call the following witnesses to testify at trial:

- FBI Special Agent Joseph O'Connor may testify as an overview and/or summary witness.

- Warden Patricia Powers may testify about the policies and training of the Philadelphia Department of Prisons ("PDP").

- V.H. may testify about being attacked and about the medical treatment he received following the attack.

- Sergeant Granville may testify about the assault on V.H. and how the defendants falsified paperwork regarding the assault.

---

[1] The statements of Andrews and Malloy do not create an issue under the Confrontation Clause, because neither statement implicates any other defendants. *See Samia v. United States*, 599 U.S. 635 (2023).

- Captain Joseph Fanelli may testify about the reports that defendant Malloy wrote following the attack.

- Captain Joseph Browne may testify about events related to the victim's post-incident prison disciplinary hearing, including the use of force report submitted by Andrews prior to the hearing, and the fact that V.H. was not cited in the prison disciplinary proceeding for attempting to assault a prison guard.

- Major Walter Gray may testify about the materials and paperwork that the defendants submitted following the attack.

- Deputy Wardens Edward Miranda and/or William Vetter may testify about matters related to the defendants' post-attack conduct.

- One or more individuals who worked for Corizon Health may testify about the medical treatment V.H. received following the attack, as well as the treatment he received the day before the attack.

- One or more individuals who work for Jefferson Health may testify about the medical treatment V.H. received following the attack.

- Special Agent C.J. Jackson may testify about the statements that the defendants made to the FBI.

The government reserves the right to call additional witnesses as rebuttal witnesses and to authenticate documents.

The government expects to offer the following evidence:

- Video footage showing the events that preceded the assault on V.H., a portion of the assault on V.H., and the aftermath of the assault.

- Medical records of V.H. offered under Federal Rules of Evidence ("FRE") 803(6) and 902(11), containing statements that fall under the hearsay exception for statements made for medical diagnosis or treatment under FRE 803(4).

- Prison records generated due to the assault offered under Federal Rules of Evidence 803(6) and 902(11), containing statements of the defendants that are admissible under FRE 801(d)(2). Statements made between co-conspirators are not testimonial and thus do not require special analysis under the Confrontation Clause. *See United States v. Hendricks*, 395 F.3d 173, 181-182 (3d Cir. 2005).

- The defendants' training records, which are admissible under FRE 803(6).

## III. THE ELEMENTS OF THE DEFENDANTS' CRIMES

### Counts One and Two (Deprivation of Rights Under Color of Law)

Counts One and Two charge defendants Andrews, Hart, and Murray with deprivation of rights under color of law under 18 U.S.C. § 242. In order to prove this offense beyond a reasonable doubt, the government must prove the following elements:

(i) [t]he defendant was acting under color of law;

(ii) the defendant deprived the victim of a constitutional right;

(iii) the defendant acted willfully;

(iv) the offense occurred in the United States; and

(v) the victim suffered a bodily injury as a result of the defendant's acts.

*See* Seventh Circuit Model Jury Instructions, 18 U.S.C. § 242. The term bodily injury includes temporary physical pain. *See* Seventh Circuit Model Jury Instruction, 18 U.S.C. § 242, Definition of Bodily Injury.

### Count Three (Conspiracy)

Count Three charges all four defendants with conspiring to falsify reports in violation of 18 U.S.C. § 371. In order to prove this offense beyond a reasonable doubt, the government must prove the following elements:

(i) "two or more persons agreed to commit an offense against the United States, as charged in the indictment;"

(ii) the defendant "was a party to or member of that agreement;"

(iii) the defendant "joined the agreement or conspiracy knowing of its objective to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and

       (iv)       the intent to achieve a common goal or objective, to commit an offense against the United States;" and

       (iv)       "at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objectives of the agreement."

Third Circuit Model Jury Instruction 6.18.371A.

## **Counts Four through Ten (Falsification of Records)**

Counts Four through Ten charge the defendants with falsifying records in violation of 18 U.S.C. § 1519. In order to prove this offense beyond a reasonable doubt, the government must prove the following elements:

       (i)       the defendant knowingly…falsified…a record [or] document;

       (ii)       the defendant acted with the intent to impede, obstruct, or influence the investigation in relation to a matter; and

       (iii)       the matter was within the jurisdiction of…an agency…of the United States.

Fifth Circuit Model Jury Instruction 2.65.

## **Count Eleven (Making a False Statement)**

Count Eleven charges Andrews with making a false statement to the FBI in violation of 18 U.S.C. § 1001(a)(2). In order to prove this offense beyond a reasonable doubt, the government must prove the following elements:

       (i)       the defendant made a statement or representation;

       (ii)       the statement or representation was false;

       (iii)       the false statement was made knowingly and willfully;

       (iv)       the statement or representation was material; and

       (v)       the statement or representation was made in a matter within the jurisdiction of the federal government.

*United States v. Harra*, 985 F.3d 196, 207 n.3 (3d Cir. 2021).

IV.      LEGAL ISSUES

**Authentication and Chain of Custody**

      To authenticate an item of evidence, the proponent's burden is not substantial. The Third Circuit has stated that "[t]he burden of proof for authentication is slight." *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir.1985); *see also Link v. Mercedes–Benz of North America*, 788 F.2d 918, 927 (3d Cir.1986). In *Link*, the Third Circuit held: "[T]he showing of authenticity is not on a par with more technical evidentiary rules, such as hearsay exceptions, governing admissibility. Rather, there need be only a prima facie showing, to the court, of authenticity, not a full argument on admissibility. Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court. The only requirement is that there has been substantial evidence from which they could infer that the document was authentic." *Id.* at 927.

      "To establish a chain of custody sufficient to make evidence admissible, the proponent 'need only prove a rational basis from which to conclude' that the evidence is what the party claims it to be." *Id.* (quoting *United States v. Mendel*, 746 F.2d 155, 167 (2d Cir. 1984)).

**The Limited Use of Agents' Notes and Reports to Cross-Examine Witnesses**

      The government has provided the defense with reports of witness interviews by government agents. To the extent that the agents who prepared the reports testify, those reports, if materially inconsistent, provide an appropriate basis for impeachment of the agents. However, under the Federal Rules of Evidence, those reports may not be used to impeach the subject of the underlying interview unless the subject has somehow adopted those reports or notes. *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992).

In *Almonte*, a DEA agent testified at trial about the post-arrest statements that he had obtained from two defendants who were being tried. *Id*. at 28. One defendant sought to impeach the agent by admitting interview notes taken by an Assistant U.S. Attorney who had interviewed the agent as a prior inconsistent statement. *Id*. at 28-29. The district court rejected the effort, and the Second Circuit affirmed, holding that the AUSA's notes were not the agent's statement but merely a "third party's characterization" of the agent's statement and therefore irrelevant as an impeaching prior inconsistent statement and consequently inadmissible:

> We have held, however, that a "third party's characterization" of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization. . . . Thus, in the absence of endorsement by the witness, a third party's notes of a witness's statement may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words. The problem, in essence, is one of relevancy. If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible.

*Id*. at 29 (citation omitted).

As a matter of evidence, the burden "of proving that notes reflect the witness's own words rather than the note-taker's characterization falls on the party seeking to introduce the notes." *Id*. Thus, a party seeking to use a report to impeach bears the burden of proving a rational basis for concluding that the report either was adopted by the witness or represents the verbatim transcript of the witness' statement. *See id*. at 30. In the absence of such proof, cross-examination from such reports or notes should be carefully scrutinized so that a statement that is otherwise inadmissible is not back-doored into evidence and read into the record. *See United States v. Shoenborn*, 4 F.3d 1424, 1427-28, 1429 n.3 (7th Cir. 1993). In this case, the defendant should not be permitted to admit notes or reports to impeach the underlying subjects of those interviews, or to cross-examine witnesses using any portion of the statement.

**Testimony of Treating Doctor or Nurse**

During its case-in-chief, the government may call one or more of the victim's treating doctors and nurses. "A treating physician does not need to be qualified as an expert, pursuant to Fed. R. Evid. 702, if he or she is only called as a fact witness, to establish diagnosis or treatment." *DeSanto v. Rowan Univ.*, 224 F. Supp. 2d 819, 830 (D.N.J. 2002) (citing *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 159 n.8 (3d Cir. 1999)).

**Conspiracy Generally**

Where the indictment charges the existence of a conspiracy containing multiple members, the government must provide evidence at trial that will allow a reasonable fact finder to conclude beyond a reasonable doubt that the defendant and at least one other person shared a "unity of purpose" or the intent to "achieve a common goal" and an agreement to "work together toward the goal." *United States v. Applewaite*, 195 F.3d 679, 684 (3d Cir. 1999) (citations omitted). The government is not required to prove the existence of an express or formal agreement. *Agnail v. United States*, 420 U.S. 770, 777 n.10 (1975).

Conspiracy law merely requires that the inferences drawn have a logical and convincing connection to the evidence. *Applewaite*, 195 F.3d at 684. Moreover, "juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *United States v. Ramirez*, 954 F.2d 1035, 1039 (5th Cir. 1992). To sustain a conspiracy conviction, the government need only show sufficient evidence that the defendant conspired with "someone - anyone." *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir. 2001) (citation omitted).

**Admissibility of Co-Conspirator Statements**

At trial, the government may offer statements of co-conspirators to establish the existence of a criminal conspiracy. Federal Rule of Evidence 801(d)(2)(E) provides that "a statement made by a co-conspirator of a party during the course and in furtherance of that conspiracy" is not hearsay and may be admitted as evidence against a co-conspirator. In order for a court to admit the co-conspirator statement, the government must prove that (1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. *See United States v. McGlory*, 968 F.2d 309, 333-34 (3d Cir. 1992). When determining the admissibility of a co-conspirator statement, the existence of the conspiracy and the party's participation in that conspiracy need only be proved by a preponderance of the evidence. *United States v. Bourjaily*, 483 U.S. 171, 175 (1987). Moreover, statements made between co-conspirators are not testimonial and thus do not require special analysis under the Confrontation Clause. *See United States v. Hendricks*, 395 F.3d 173, 181-182 (3d Cir. 2005).

In making a preliminary factual determination as to the existence of a conspiracy and the defendant's participation in it, courts may consider the offered hearsay statement itself. *Bourjaily*, 483 U.S. at 180-81. "[T]here is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." *Id.* The district court should consider the totality of the circumstances when deciding the admissibility of such evidence. "The circumstances surrounding the statement, such as the identity of the speaker, the context in which the statement

is made, or evidence corroborating the contents of the statement," should be considered by the trial court. *See* Fed. R. Evid. 801(d)(2) (Advisory Committee Notes).

The Third Circuit has commented that the "in furtherance" requirement is to be given a broad interpretation. *See United States v. DePeri*, 778 F.2d 963, 981-982 (3d Cir. 1985). While mere narratives of past events or mere idle chatter that has no current purpose are not generally deemed to occur in furtherance of the conspiracy, statements that "provide reassurance, serve to maintain trust and cohesiveness among co-conspirators, or inform each other of the current status of the conspiracy" further the conspiracy. *United States v. Ammar*, 714 F.2d 238, 252 (3d Cir. 1983). In order for statements to be deemed "in furtherance of the conspiracy," they need not actually "further" the conspiracy; it is sufficient that a statement was intended to promote the conspiracy, even if it did not actually do so. *See United States v. Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993).

**Testimony of What a Listener Understood a Declarant to Mean**

A witness may testify to what he or she understood a declarant to mean with respect to a statement made by the declarant to the witness. *United States v. Brooks*, 473 F.2d 817, 818 (9th Cir. 1973) (per curiam).

**Punishment is Irrelevant**

The punishment for the offense charged is not a proper matter for the jury's consideration. *United States v. Fisher*, 10 F.3d 115, 121 (3d Cir. 1993). As the court observed in *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980): "The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial. Breach of this standard has often been grounds for reversal. A jury is obligated to reach its verdict without regard to what sentence might be imposed." *See id.* (citation and quotations omitted).

**Cooperators – Plea Agreements**

The government expects one cooperating witness to testify. This witness has pled guilty and has entered into a plea agreement with the government. The government has produced the cooperator's plea agreement. Evidence of a written plea agreement is permissible to allow the jury to assess the witness's credibility, to eliminate any concern that the defendant has been singled out for prosecution, and to explain how the witness has first-hand knowledge of the events to which he or she is testifying. *See United States v. Universal Rehab. Servs. Inc.,* 205 F.3d 657, 667 (3d Cir. 2000) (*en banc*).

During direct examination, the government will discuss the written plea agreement and the witness's responsibilities under the terms of the agreement, including the witness's obligation to tell the truth. *See United States v. Ramos,* 27 F.3d 65, 67 n.4 (3d Cir. 1994) (noting that such testimony may be introduced by the government).

A witness's guilty plea and plea agreement may not be considered as evidence of a defendant's guilt. *See Universal Rehab. Servs.,* 205 F.2d at 668. The Third Circuit has held that, in such cases, the jury should be instructed that it may not consider the witness's guilty plea and/or plea agreement as evidence that the defendant is guilty. *See Universal Rehab. Servs.,* 205 F.2d at 668. Accordingly, the government has included a cautionary instruction to the jury with its proposed jury instructions.

***Batson* Challenges**

In an abundance of caution, the government notes that it has standing to challenge preemptory jury strikes under *Batson v. Kentucky*, 476 U.S. 79 (1986). *See Georgia v. McCollum*, 505 U.S. 42, 55-56 (1992). The Court has established that "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the

exercise of peremptory challenges. Accordingly, if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants must articulate a racially neutral explanation for peremptory challenges." *Id.* at 59.

                                              Respectfully submitted,

                                              DAVID METCALF
                                              United States Attorney

                                              */s/ Michael R. Miller*
                                              MICHAEL MILLER
                                              EVERETT WITHERELL
                                              Assistant United States Attorneys

Dated:   February 2, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the Government's Trial Memorandum has been served by electronic filing on all counsel of record.

/s/ *Michael R. Miller*
MICHAEL R. MILLER
Assistant United States Attorney

Dated: February 2, 2026